UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARSHA CHAMBERS, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:06-CV-2279-G |
| CITY OF MESQUITE, ET AL., | ) | |
| | ) | **ECF** |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this court is the motion of the defendants Officer D.R. McKee ("McKee"), Officer K.R. Griffin ("Griffin"), and the City of Mesquite ("City") for judgment on the pleadings. For the reasons stated below, the motion is granted.

I. BACKGROUND

This case arises from the arrest and prosecution of the *pro se* plaintiffs Marsha and Jerry Chambers ("the Chambers" or "the plaintiffs"). The petition alleges two separate events to support the plaintiffs' claims for relief. First, the plaintiffs allege that on some unspecified date, the City of Mesquite ("the City"), through its police

department, obtained and executed an arrest warrant against Mrs. Chambers for abuse of the 911 system. *See* Petition at 3, *attached to* Notice of Removal *as* Exhibit 3. According to the plaintiffs, when the Chambers' daughter was late returning home on the evening of November 12, 2003, Mrs. Chambers called the City's police department using the 911 system. *Id.*; Response to Defendant's Motion for Rule 7 Reply ("Rule 7 Reply") at 2. After the daughter returned home, Mrs. Chambers did not call the police department to notify the police of her daughter's subsequent arrival. Petition at 3. Some time after the date of this incident, the City obtained and executed an arrest warrant against Mrs. Chambers charging her with abuse of the 911 system. *Id.*

The second incident involved the plaintiffs' attempt to collect unpaid rent from tenants leasing certain real property from the Chambers. *Id.* On April 16, 2004, the Chambers deliberately severed the water line connecting the City's water supply to the rental property owned by them. *Id.* The officers who were called to the scene, McKee and Griffin, arrested the Chambers on charges of criminal mischief. Defendants Officer D.R. McKee, Officer K.R. Griffin and the City of Mesquite's Motion for Judgment on the Pleadings and Brief in Support ("Motion for Judgment on the Pleadings") at 4-5.

Following the arrests, a prosecution of these charges was commenced against the Chambers. Although the allegations of the petition are not entirely clear, it

appears that after jury selection, all charges against the Chambers were dismissed. *Id.* at 4.

The plaintiffs then filed this case on November 9, 2006 in the 192nd Judicial District Court of Dallas County, Texas, alleging violations of 42 U.S.C. §§ 1983 and 1985. The defendants removed the case to this court on December 11, 2006. On May 11, 2007, this court (1) granted the motion of the defendant State of Texas to dismiss the plaintiffs' petition for failure to state a claim on which relief can be granted; (2) granted the motion of the defendant Dallas County to dismiss the petition for failure to state a claim; (3) denied the motion of McKee and Griffin for a FED. R. CIV. P. 7(a) reply as moot; and (4) ordered the plaintiffs to show cause why they have not perfected service on the named defendant Judge Danny Clancy.[1]

## II. ANALYSIS

Before analyzing the arguments made by the parties on this motion, the court must first determine what causes of action are alleged by the Chambers. The claims of *pro se* litigants are to be construed liberally. See *Kaltenbach v. Richards*, 464 F.3d 524, 527 (5th Cir. 2006). Under a liberal construction of the petition, the court understands the Chambers to be asserting two general claims: (1) various violations of 42 U.S.C. § 1983 and (2) a conspiracy in violation of 42 U.S.C. § 1985. The plaintiffs' § 1983 claims appear to be based on alleged violations of the Chambers'

---

[1] On June 7, 2007, the court dismissed all claims against the defendant Judge Danny Clancy.

rights to due process stemming from what they categorize as false arrests and malicious prosecutions. The § 1985 claim alleges a conspiracy among all of the defendants to deprive the Chambers of those rights to due process.

Though the Chambers expressly cite 42 U.S.C. § 1985 to allege a conspiracy for the deprivation of their constitutional rights, § 1985 is inapplicable to their claims. To prevail on a claim of conspiracy under 42 U.S.C. § 1985(3), the plaintiffs must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, either directly or indirectly, a person or class of persons of equal protection of the laws; (3) an act in furtherance of that conspiracy; and (4) an injury to the person or property or a deprivation of any right or privilege of a citizen of the United States. See *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). In addition, the plaintiffs must allege that the conspiracy stems from "some racial or perhaps otherwise class-based invidiously discriminatory animus." *Griffin*, 403 U.S. at 102; *Hillard*, 30 F.3d at 652-53.

Despite settled law that the conspiracy must be based on some class-based discriminatory animus, the Chambers fail to allege such animus. Even under a liberal construction, the court can discern only one legal basis for the Chambers' causes of action -- violations of 42 U.S.C. § 1983.

### A. Legal Standard for Rule 12(c)

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). When ruling on such a motion, the court must regard allegations of fact in the complaint as true. See *Cash v. Commissioner of Internal Revenue*, 580 F.2d 152, 154 (5th Cir. 1978). The court may enter judgment on the pleadings only if the material facts show that the movants are entitled to prevail as a matter of law. See *Greenberg v. General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973). This standard is roughly equivalent to that applied on a motion under Rule 12(b)(6) to dismiss for failure to state a claim. See 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE 1367 (1990); see also *St. Paul Insurance Company of Bellaire, Texas v. AFIA Worldwide Insurance Company*, 937 F.2d 274, 279 (5th Cir. 1991).

### B. Claims Under § 1983

To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986), and *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155 (1978)).

1. <u>Defendants McKee and Griffin</u>

The threshold question the court must answer is whether the defendant government officials are entitled to qualified immunity on the plaintiffs' claims. See *Mangieri v. Clifton*, 29 F.3d 1012, 1015 (5th Cir. 1994) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991), and *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993), *cert. denied*, 510 U.S. 1123 (1994)). The plaintiffs must allege particularized facts which, if proved, would defeat a qualified immunity defense. See *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989) (citing *Geter v. Fortenberry*, 849 F.2d 1550 (5th Cir. 1988); *Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985); and *Jacquez v. Procunier*, 801 F.2d 789 (5th Cir. 1986)); see also *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) ("[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff.") (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)).

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). The existence of qualified immunity is a policy decision which weighs the vindication of individuals' rights against society's needs for effective government. *Elliott*, 751 F.2d

at 1476-78. The need for effective government outweighs individual rights to this extent -- some justified claims will necessarily be dismissed in the interest of freeing public officials "to exercise their duties and functions without fear of having their attentions distracted by the subsequent claims of unhappy or unsuccessful litigants." *Id*. at 1478.

Where civil rights violations are asserted, a government official is entitled to qualified immunity if a reasonable official could have believed his actions to be lawful "in light of clearly established law [at the time] and the information the [official] possessed." *Babb*, 33 F.3d at 477 (quotations omitted); see also *Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987); *Matherne v. Wilson*, 851 F.2d 752, 756 (5th Cir. 1988) (holding that the court must measure the "law's certainty" against "an objectively reasonable view of the facts facing an official"). The contours of the plaintiffs' rights must have been clear enough for a reasonable official to have understood that he was violating those rights. *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994) (citing *Texas Faculty Association v. University of Texas at Dallas*, 946 F.2d 379, 389-90 (5th Cir. 1991)). Thus, in light of the preexisting law, the unlawfulness of a defendant's acts must have been apparent. *Anderson*, 483 U.S. at 638-40; *Hodorowski v. Ray*, 844 F.2d 1210, 1216-17 (5th Cir. 1988).

"The qualified immunity defense 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the

law.'" *Gibson*, 44 F.3d at 277 (citation omitted). Government officials are entitled to the defense of qualified immunity if "their decision was reasonable, albeit mistaken." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (per curiam) (citation omitted), *cert. denied*, 511 U.S. 1019 (1994). The court is to determine as a matter of law if an official's acts were reasonable. *Mangieri*, 29 F.3d 1015-16 (citing *Lampkin*, 7 F.3d at 434-35).

Here, the plaintiffs allege that they were falsely arrested and maliciously prosecuted after they admittedly severed the City's water line and then were arrested on charges of criminal mischief. *See generally* Petition. Under the Texas Penal Code, it was unlawful for the Chambers to intentionally or knowingly, in whole or in part, impair or interrupt the water line. See TEX. PENAL CODE § 28.03 (Vernon Supp. 2005). The Chambers assert that they lawfully cut the water line as the owners of their rental property. However, their tenants were in legal possession of the property. See *id*. § 1.07(35)(a). Thus, the Chambers' actions were, in fact, illegal.

The plaintiffs have failed to defeat McKee and Griffin's qualified immunity defenses for two reasons. First, the Chambers' pleadings are conclusory, lacking specific facts to show that the defendant officers knew or should have known that their conduct violated clearly established federal law. Second, McKee and Griffin have introduced evidence sufficient to demonstrate that their actions were objectively reasonable and thus not only were immune but also did not violate the Chambers'

constitutional rights. The Chambers' actions under the circumstances gave rise to a reasonable suspicion of potential criminal activity. Therefore, McKee and Griffin did not violate the Chambers' constitutional rights. Accordingly, McKee's and Griffin's motion to dismiss the plaintiffs' § 1983 claim against them is granted.

2. The Defendant City[2]

The Chambers' claims against the City must also be dismissed. To state a valid claim against the City under § 1983, the plaintiffs must identify "(1) a policy (2) of the city's policymaker (3) that caused (4) the plaintiff[s] to be subjected to a deprivation of constitutional right." *Palmer v. City of San Antonio, Texas*, 810 F.2d 514, 516 (5th Cir. 1987) (quoting *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 169 (5th Cir. 1985), *cert. denied*, 480 U.S. 916 (1987)).

A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights; a city cannot be liable under § 1983, however, merely because it employed a tortfeasor. *Monell*, 436 U.S. at 691, 694; *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). According to the Supreme Court, "[t]he 'official policy' requirement . . . make[s] [it] clear that municipality liability [under § 1983] is limited to action for

---

[2] The § 1983 claims against all other defendants in their official capacities are, in essence, claims against the City. See *Hafer v. Melo*, 502 U.S. 21, 25-28 (1991); *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996); *Familias Unidas v. Briscoe*, 619 F.2d 391, 403 (5th Cir. 1980) (citing *Monell*, 436 U.S. at 690 n.55, and *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

which the municipality is actually responsible . . . -- that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). The policy or custom must be "the moving force of the constitutional violation." *Palmer*, 810 F.2d at 516 (quoting *Monell*, 436 U.S. at 694). Although the plaintiffs have identified no official written policy regarding their § 1983 claim, such a policy may nevertheless exist in the form of an unwritten custom. The custom or policy must actually be that of the City's governing body before the City can be held liable. See *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc), *cert. denied*, 472 U.S. 1016 (1985).

A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority. *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339-40 (5th Cir. 1989) (citations omitted); see also *Palmer*, 810 F.2d at 516. "'[M]unicipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur*, 475 U.S. at 483-84).

The Fifth Circuit defines official policy as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.) (per curiam), *aff'd in relevant part*, 739 F.2d 993 (5th Cir. 1984) (en banc); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (citing *Bennett*, 735 F.2d at 862).

The plaintiffs allege that the City "filed false charges on Plaintiff, Marsha Chambers . . . ." Petition at 2; see also *id.* at 3-4, 8-9. Even when the facts are read in the light most favorable to the Chambers, they do not tend to show any policy or custom of the City which caused the alleged injury in this case. See *Campbell*, 43 F.3d at 977. Nothing in the record provides evidence of a longstanding pattern of repeated constitutional violations. Therefore, the City's motion to dismiss the plaintiffs' § 1983 claim against them is granted.[3]

---

[3] The Chambers also sued "Jane/John Doe City of Mesquite Official in Individual Capacity." *See generally* Petition. Under FED. R. CIV. P. 4(m), a plaintiff has 120 days from the date of filing the complaint within which to serve a defendant. "If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, . . . on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant . . .". *Id.* If a case has been removed to federal court, the 120-day time period begins to run
(continued...)

## III. CONCLUSION

For the reasons stated, the motion of defendants for judgment on the pleadings is **GRANTED**.

**SO ORDERED**.

January 3, 2008.

_____
**A. JOE FISH**
**Senior United States District Judge**

---

[3](...continued)
on the date of removal. See *Hunt v. Smith*, 67 F. Supp. 2d 675, 684 (E.D. Tex. 1999). Because more than 120 days have passed since the date of removal, the claims against this defendant are dismissed.